# EXHIBIT A

**IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT**
**IN AND FOR OSCEOLA COUNTY, FLORIDA**
**CIVIL DIVISION**

NOAH DERYLAK FOR FRANK
DERYLAK(DECEASED) and CRAIG
MAXWELL,

      Plaintiffs,

-vs-                             CASE NO.:  2023-CA-001915

WHITE RIVER MARINE GROUP LLC;
BRUNSWICK CORPORATION d/b/a
MERCURY MARINE; DOMETIC MARINE
CANADA INC.; T-H MARINE SUPPLIES,
LLC;

      Defendant.

_____/

## SECOND AMENDED COMPLAINT

**COMES NOW**, Plaintiffs, NOAH DERYLAK FOR FRANK DERYLAK(DECEASED) and CRAIG MAXWELL, by and through undersigned counsel, hereby files this Second Amended Complaint[1] suing Defendants White River Marine Group LLC, Brunswick Corporation d/b/a Mercury Marine, Dometic Marine Canada, Inc., and T-H Maine Supplies, LLC, in support thereof states as follows:

## INTRODUCTION

1.     Plaintiffs, Noah Derylak (hereinafter Noah) for Frank Derylak-deceased (hereinafter "Frank") and Craig Maxwell (hereinafter "Craig") bring this action to recover for the serious, permanent, and life-altering injuries Craig suffered and continues to suffer and the death of Frank due to a defective and unreasonably dangerous 2022 Ranger Z520 R Ranger Cup

---

[1] This Second Amended Complaint is being filed per the agreement with existing Defendant White River Marine Group, LLC to add the three new Defendants to this case.

Fiberglass Boat bearing Hull Identification number RGR395471122 and registration number fl8755tk.

2. Plaintiffs sue Defendants and White River Marine Group LLC, Brunswick Corporation d/b/a Mercury Marine, Dometic Marine Canada, Inc., and T-H Maine Supplies, LLC, for their respective roles in designing, manufacturing, assembling, producing, distributing, supplying, labeling, marketing, and selling the defective and unreasonably dangerous Subject Boat.

3. Through this lawsuit, Plaintiffs seek to recover for the death of Frank and the permanent injuries and damages Craig suffered and continues to suffer to this day, including but not limited to his physical injuries, past and future medical and treatment costs, past and future pain, suffering, severe mental anguish, and loss of enjoyment for life caused by the Defendants and their defective Subject Boat.

## THE PARTIES

4. Plaintiff Noah Derylak for Frank Derylak was and at all material times a resident of Deland, Florida.

5. Plaintiff Craig Maxwell was and at all material times a resident of Wesley Chapel, Florida.

6. Defendant, White River Marine Group LLC ("White River Marine") is a foreign limited liability company organized under the laws of Missouri. White River Marine Group LLC is authorized by the Florida Department of State to do business in Florida.

7. Defendant Brunswick Corporation is a foreign corporation organized under the laws of Delaware. Defendant Brunswick Corporation is authorized by the Florida Department of State to do business under the fictitious name "Mercury Marine."

8. Defendant Brunswick Corporation can be served process through its registered agent United Agent Group Inc., 801 US Highway 1, North Palm Beach, Florida 33408.

9. Defendant Dometic Marine Canada, Inc., ("Dometic Marine") is a foreign corporation organized under the laws of Canada. Defendant Dometic Marine Canada, Inc. is authorized by the Florida Department of State to do business in Florida.

10. Defendant Dometic Marine Canada, Inc. can be served process through its registered agent C T Corporation System, 1200 South Pine Island Road, Plantation, Florida 33314.

11. Defendant Dometic Marine Canada, Inc. is the marine arm of the Swedish conglomerate Dometic Group. Defendant Dometic Marine Canada, Inc. derives substantial revenue by marketing, selling and supplying marine steering systems for use within the State of Florida.

12. Defendant T-H Marine Supplies LLC ("T-H Marine") is a foreign limited liability company organized under the laws of Delaware. T-H Marine Supplies LLC is authorized by the Florida Department of State to do business in Florida.

13. Defendant, T-H Marine Supplies LLC may be served with process on its registered agent: Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301.

14. Defendant T-H Marine Supplies LLC manufactures the Atlas Jack Plate and Atlas Jack Plate Accessories that are used on Ranger Boats. T-H Marine Supplies LLC derives substantial profits from its business supplying jack plates to Defendant White River Marine Group LLC for use in the State of Florida.

15. Defendant, White River Marine Group LLC may be served with process on its registered agent: C T Corporation System, 1200 South Pine Island Road, Plantation, Florida 33314.

16. Defendant, White River Marine Group LLC is one of the world's largest bass boat

manufacturers and derives substantial revenue from exploiting the Florida bass fishing marketplace.

17.    Defendant White River Marine Group LLC designed, manufactured, assembled, distributed, supplied, tested, inspected, marketed, and/or sold the Subject Boat. Defendant White River Marine Group LLC acquired Ranger Boats in its acquisition of Fishing Holdings LLC in 2014.

18.    Defendant Brunswick Corporation manufactured the Subject Outboard.

19.    Defendant Dometic Marine manufactured the Subject Steering System.

20.    Defendant T-H Marine manufactured the Subject Jack Plate.

21.    Defendant White River Marine manufactured the Subject Boat using the Subject Outboard, Subject Steering System and Subject Jack Plate. The Subject Outboard, Subject Steering System and Subject Jack Plate will sometimes be collectively referred to as a "Control Components."

22.    Because of Defendant White River Marine's immense market share of bass boats and other boats, Defendant Brunswick Corporation, Defendant Dometic Marine, and Defendant T-H Marine are all dependent on sales that they make to Defendant White River Marine.

23.    For example, White River Marine's Tracker line of bass boats actually uses rebadged Brunswick Corporation engines marketed as Tracker Outboard Motors.

24.    Brunswick Corporation wholly admits its dependence on sales to White River Marine in its SEC filings explaining that a loss of their contract with White River Marine or even a re-negotiation to favorable pricing threatens to depress earnings. For this reason, Brunswick corporations continuously monitors its relationship with White River Marine and maintains its product line up in a way to ensure a constant stream of products will be sold to White River Marine.

25.     The same is true for the other Defendants whose products are generally used with the Mercury engines sold by Brunswick Corporation to White River Marine.

26.     Therefore, Defendants interrelationships and interdependency requires both the sharing of design and manufacturing knowledge regarding the Control Components to accomplish White River Marine's manufacturing of boats including the Subject Boat.

## JURISDICTION & VENUE

27.     This is an action for damages that exceeds the sum of FIFTY THOUSAND DOLLARS ($50,000.00), exclusive of costs, interest and attorneys' fees (the estimated value of Plaintiff's claim is in excess of the minimum jurisdictional threshold required by this Court).

28.     This Court is authorized to exercise personal jurisdiction over Defendant Brunswick Corporation pursuant to the Florida Long-Arm Statute, Fla. Stat. §§ 48.193(1)(a)(1), (1)(a)(2), and (1)(a)(6), because the causes of action stated herein arise out of Brunswick Corporation's:

     a. Operating, conducting, engaging in, or carrying on a business or business venture in Florida or having an office or agency in Florida.
     b. Committing a tortious act within Florida; or
     c. Causing injury to persons or property within Florida arising out of an act or omission committed outside Florida where, at or about the time of the injury, either (i) Brunswick Corporation was engaged in solicitation or service activities within Florida, or (ii) products, materials, or things processed, serviced, imported, distributed or manufactured by Brunswick Corporation anywhere were used or consumed in Florida in the ordinary course of commerce, trade, or use.

29.     Specifically, this Court is authorized to exercise jurisdiction over Defendant Brunswick Corporation because Brunswick Corporations Mercury Marine division specifically targets and serves the Florida bass fishing marketplace. Defendant has designed its products to meet the specific requirements of Florida law, deliberately marketed its products to Floridians, and established a distribution channel in Florida to build demand for its products, including indirectly

through White River Marine LLC product lines that it knows are sold and used in Florida. This includes the following actions to purposefully avail itself of Florida law:

a. Operating a dealership network within the State of Florida.
b. Operating a service network to support and encourage sales within the State of Florida.
c. Supplying engines to White River Maring LLC for use and sale within the State of Florida.
d. Regularly attending and supporting marine tradeshows within the State of Florida to promote the sale of Mercury engines.
e. Sponsoring bass boat tournaments within the State of Florida to further the marketing of its products to Floridians.

30.    This Court is authorized to exercise personal jurisdiction over Defendant Dometic Marine Canada, Inc., pursuant to the Florida Long-Arm Statute, Fla. Stat. §§ 48.193(1)(a)(1), (1)(a)(2), and (1)(a)(6), because the causes of action stated herein arise out of Dometic Marine Canada, Inc.'s:

a. Operating, conducting, engaging in, or carrying on a business or business venture in Florida or having an office or agency in Florida.
b. Committing a tortious act within Florida; or
c. Causing injury to persons or property within Florida arising out of an act or omission committed outside Florida where, at or about the time of the injury, either (i) Dometic Marine Canada, Inc. was engaged in solicitation or service activities within Florida, or (ii) products, materials, or things processed, serviced, imported, distributed or manufactured by Dometic Marine Canada, Inc. anywhere were used or consumed in Florida in the ordinary course of commerce, trade, or use.

31.    Specifically, this Court is authorized to exercise jurisdiction over Defendant Dometic Marine Canada, Inc. because Dometic Marine Canada, Inc. specifically targets and serves the Florida marketplace. Defendant has designed its products to meet the specific requirements of Florida law, deliberately marketed its products to Floridians, and established a distribution channel in Florida to build demand for its products, including indirectly through White River Marine LLC product lines that it knows are sold and used in Florida. This includes the following actions to purposefully avail itself of Florida law:

a. Operating a dealership network within the State of Florida.
b. Building its "brand identity" for SeaStar products within the State of Florida.
c. Operating a service network to support and encourage sales within the State of Florida that requires service to utilize and follow all Dometic instructions.
d. Supplying steering systems to White River Maring LLC for use and sale within the State of Florida.
e. Regularly attending and supporting marine tradeshows within the State of Florida to promote the sale of its SeaStar products.

32.     This Court is authorized to exercise personal jurisdiction over Defendant T-H Marine Supplies LLC, pursuant to the Florida Long-Arm Statute, Fla. Stat. §§ 48.193(1)(a)(1), (1)(a)(2), and (1)(a)(6), because the causes of action stated herein arise out of T-H Marine Supplies LLC's:

a. Operating, conducting, engaging in, or carrying on a business or business venture in Florida or having an office or agency in Florida.
b. Committing a tortious act within Florida; or
c. Causing injury to persons or property within Florida arising out of an act or omission committed outside Florida where, at or about the time of the injury, either (i) T-H Marine Supplies LLC was engaged in solicitation or service activities within Florida, or (ii) products, materials, or things processed, serviced, imported, distributed or manufactured by T-H Marine Supplies LLC anywhere were used or consumed in Florida in the ordinary course of commerce, trade, or use.

33.     Specifically, this Court is authorized to exercise jurisdiction over Defendant T-H Marine Supplies LLC because T-H Marine Supplies LLC specifically targets and serves the Florida marketplace. Defendant has designed its products to meet the specific requirements of Florida law, deliberately marketed its products to Floridians, and established a distribution channel in Florida to build demand for its products, including indirectly through White River Marine LLC product lines that it knows are sold and used in Florida. This includes the following actions to purposefully avail itself of Florida law:

a. Operating a dealership network within the State of Florida.
b. Sponsoring fishing tournaments within the State of Florida to further the marketing of its products to Floridians.

c. Supplying jack plate systems to White River Maring LLC for use and sale within the State of Florida.

34. This Court is authorized to exercise personal jurisdiction over White River Marine Group LLC because White River Marine Group LLC has filed an answer in this case and submitted itself to the personal jurisdiction of this Court.

35. Venue is proper in this Court because the incident occurred and the cause of action accrued in Kissimmee, Osceola County, Florida.

## FACTS

36. On January 6, 2023, Frank purchased the Subject Boat, from Russell Trancygier of Valdosta, Georgia. Mr. Trancygier purchased the boat from Airport Marine located in Alabaster, Alabama in November of 2022.

37. Frank used the boat in multiple fishing tournaments from that time until his untimely death on February 5, 2023.

38. Frank was a certified Captain, a fishing guide, avid tournament bass angler and a division tournament director in the American Bass Anglers for almost 20 years. He was a retired Navy Seal.

39. Frank and Craig were considered brothers and best friends.

40. Craig is a avid tournament bass angler, used to be the Central Florida Director for 16 years and Florida State Director for American Bass Anglers for 8 years.

41. Frank and Craig have been on the Kissimmee Chain of Lakes fishing 12 tournaments a year and have been in this area approximately 200-300 times.

42. Frank and Craig entered the water together on 2/5/23 from the Southport boat ramp in Kissimmee, Florida.

43. They went through Lock S61 on the south side of Lake Tohopekaliga and fished

200 yards down from the lock for 30 minutes.

44.     They then decided to go to another spot they knew on Cypress Lake.

45.     They were the only boat in the canal.  They continued south at approximately 45 miles per hour.

46.     As they approached the bend towards the end of the canal Frank began to turn the boat to the left.  The front of the boat was trying to turn to the left, however it appeared like the boat was on black ice and just slid on top of the water.

47.     The Boat impacted the rocks in the bend of the canal which caused a hole in the bottom of the motor.  The damage to the boat is on the right side of the boat.

48.     The malfunction that caused this event was related to the stability and control of the boat which was dependent on the proper operation of the Control Components in conjunction with Defendant White River Marine LLC's hull. The Defendants products collectively failed to provide stability and control causing the subject boat to suffer control failure. Each manufacturers respective products were a cause of the tragic accident and the defective condition of the Subject Boat.

49.     Defendants were also aware that this exact combination of components was regularly being sold as a single end product the Ranger Z520 R Ranger Cup boat. Defendants intertwined relationships leave them each dependent on each other to exploit the bass fishing industry which is a substantial revenue stream for each Defendant. Defendants each knew or should have known that the end product, the Ranger Z520 R Ranger Cup boat, including the subject boat, was unsafe, and uncontrollable.

50.     There have been several complaints in the tournament circuit that the boat does not respond to operator input. Defendants all regularly sponsor and market their products at these

events to drive revenue from their core users, bass fisherman.

51.     Defendants knew or should have known that the risk of danger associated with engineering, designing, manufacturing, assembling, distributing, supplying, and selling the Subject Boat with the Control Components outweighed any real or perceived benefits.

52.     At the time the Control Components were designed, manufactured, assembled, distributed, supplied, and sold, alternative designs and methods of manufacturing existed that would have resulted in a safer and more useful boat with little to no increase in cost to the Defendants who sold the Control Components.

53.     At the time the Subject Boat was designed, manufactured, assembled, distributed, supplied, and sold, alternative designs and methods of manufacturing existed that would have resulted in a safer and more useful boat with little to no increase in cost to the Defendant White River Marine.

54.     At the time Defendants collectively placed the Subject Boat utilizing the Control Components into the stream of commerce, they knew or reasonably should have known that the end product was defective and posed an unreasonable risk of injury to consumers and users, including Frank and Craig.

55.     Notwithstanding their knowledge or notice that the Subject Boat was defective and unreasonably dangerous, Defendants each did nothing to warn or protect consumers, including Frank and Craig, despite their ability to do so. Each of the Defendants, both individually and as a collective group, were a cause of the unreasonably dangerous condition that caused the accident.

## COUNT I – STRICT LIABILITY
### (Against Brunswick Corporation)

56.     Plaintiff re-alleges and incorporates Paragraphs 1 through 55 of this Complaint as if restated verbatim herein.

57. Brunswick Corporation manufactured, assembled, distributed, supplied, and/or sold the Subject Outboard Mercury brand engine of the Subject Boat.

58. Brunswick Corporation placed the Subject Outboard into the stream of commerce to be supplied with the Subject Boat.

59. Brunswick Corporation intended for consumers like Frank and Craig to purchase and use the Subject Boat that contained a Mercury outboard engine, and for the Subject Outboard Mercury to be used in connection with the steering mechanisms of the Subject Boat.

60. Defendant Brunswick Corporation knew this Subject Outboard would be used with the Subject Boat, intended to sell the Subject Outboard to White River Marine for use in this specific model boat with and intended the Subject Outboard to be used with the other Control Components.

61. Frank and Craig used the Subject Outboard for its intended or foreseeable use.

62. The Subject Outboard is defective in its design, manufacture, and warning.

63. The Subject Outboard's defects, whether individually or in combination with all the other Defendants' products, rendered the Subject Outboard unreasonably dangerous beyond the contemplation and expectation of ordinary consumers.

64. The Subject Outboard provided with the Subject Boat was defectively designed because it did not perform as safely as an ordinary consumer would expect when it was used by Frank and Craig in the intended and reasonably foreseeable manner.

65. The risk of danger associated with designing and manufacturing the Subject Outboard outweighed any real or perceived benefits from its steering design.

66. At the time the Subject Outboard was designed and manufactured, alternative designs and methods of manufacturing existed that would have resulted in a safer and more useful component with little to no increase in cost to Brunswick Corporation.

67.     Brunswick Corporation knew or reasonably should have known that Frank and Craig would use the Subject Outboard without knowing of or inspecting for the Subject Outboard's defective condition.

68.     The Subject Outboard left Brunswick Corporation's possession and control with the defects alleged in this Complaint, and the Subject Outboard remained in this defective and unreasonably dangerous condition until and throughout the incident giving rise to this lawsuit.

69.     At all times material hereto, the Subject Outboard remained substantially unchanged from its designed and manufactured condition.

70.     The Subject Outboard's defective condition directly and proximately acted as a cause of the death of Frank and a cause of the permanent injury and damage to Craig.

**WHEREFORE**, Plaintiffs, Noah Derylak for Frank Derylak and Craig Maxwell, demands judgment against Defendant, Brunswick Corporation, for the death of Frank and all injuries and damages Craig sustained due to the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT II—NEGLIGENCE
### (Against Brunswick Corporation)

71.     Plaintiff re-alleges and incorporates Paragraphs 1 through 55 of this Complaint as if stated verbatim herein.

72.     Brunswick Corporation manufactured, assembled, distributed, supplied, and/or sold the Subject Outboard for use with the Subject Boat and with the other Control Components.

73.     Brunswick Corporation placed the Subject Outboard into the stream of commerce.

74.     Brunswick Corporation intended or reasonably foresaw that Frank and Craig would

use the Subject Outboard with the Subject Boat.

75. Frank and Craig used the Subject Outboard and the Subject Boat for their intended or foreseeable use.

76. Brunswick Corporation owed the following duties to Frank and Craig:

   a. To manufacture, assemble, distribute, supply, and/or sell the Subject Outboard in a condition that was not defective or unreasonably dangerous to consumers and users;

   b. To provide adequate warnings and instructions with the Subject Outboard advising intermediaries, consumers and users about the proper use of the Subject Outboard, about the Subject Outboard defective condition(s), and about how to avoid being injured by the Subject Outboard defects; and

   c. To adequately test, inspect, and ensure the quality any capacities of the Subject Outboard before distributing and selling the Subject Outboard to consumers.

   d. To ensure that the foreseeable and intended use of the Subject Outboard with the Subject Boat with the other Control Components was reasonably safe.

77. Brunswick Corporation breached its duties by:

   a. Manufacturing, assembling, distributing, supplying, and/or selling the Subject Outboard in a defective and unreasonably dangerous condition;

   b. Failing to provide adequate warnings and instructions with the Subject Outboard advising consumers and users about the proper use of the Subject Outboard, about the Subject Outboard's defective condition(s), and about how to avoid being injured by the Subject Outboard's defects; and

   c. Failing to adequately test, inspect, and ensure the quality of the Subject Outboard before distributing and selling the Subject Outboard to White River Marine LLC for use in the Subject Boat.

   d. Failing to advise White River Marine that the Subject Steering System was incompatible with the Subject Boat and could not be used safely with the Subject Boat with the other Control Components.

78. Brunswick Corporation knew or reasonably should have known that consumers like Frank and Craig would use the Subject Outboard without knowing of or inspecting for the defects

alleged herein.

79.    Brunswick Corporation knew or reasonably should have known that consumers like Frank and Craig would suffer injury and damage due to the Subject Outboard's defective and unreasonably dangerous condition.

80.    At no time did Brunswick Corporation take action to remedy the Subject Outboard's defective and unreasonably dangerous condition or warn consumers about the Subject Outboard's defective and unreasonably dangerous condition, despite Brunswick Corporation's knowledge of these facts and ability to take action.

81.    Brunswick Corporation's breaches of the duties it owed to Frank and Craig an actual and proximate caused the death of Frank and a cause of permanent injury and damage to Craig.

82.    As a direct and proximate result of Brunswick Corporation's negligence, Plaintiffs suffered death and  bodily injury including a permanent injury to the body as a whole, pain and suffering of both a physical and mental nature, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, activation of a latent condition and/or aggravation of a pre-existing condition, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and loss of ability to lead and enjoy a normal life.  The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

**WHEREFORE**, Plaintiff**,** Noah Derylak for Frank Derylak and Craig Maxwell, demands judgment against Defendant, Brunswick Corporation, for the death of Frank and all injuries and damages Craig sustained due to the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages,

non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, costs, and interest, and for any such further relief as the Court deems appropriate.

## <u>COUNT III – STRICT LIABILITY</u>
### (Against Dometic Marine)

83. Plaintiff re-alleges and incorporates Paragraphs 1 through 55 of this Complaint as if restated verbatim herein.

84. Dometic Marine manufactured, assembled, distributed, supplied, and/or sold the Subject Steering System of the Subject Boat.

85. Dometic Marine placed the Subject Steering System into the stream of commerce to be supplied with the Subject Boat.

86. Dometic Marine intended for consumers like Frank and Craig to purchase and use the Subject Boat because it contained a SeaStar steering system.

87. Defendant Dometic Marine knew this Subject Steering System would be used with the Subject Boat, intended to sell the Subject Steering System for use in this specific model boat and intended that the Subject Steering System would be used with the other Control Components.

88. Frank and Craig used the Subject Steering System for its intended or foreseeable use.

89. The Subject Steering System is defective in its design, manufacture, and warning.

90. The Subject Steering System's defects, whether individually or in combination with all the Defendants products, rendered the Subject Steering System unreasonably dangerous beyond the contemplation and expectation of ordinary consumers.

91. The Subject Steering System provided with the Subject Boat was defectively designed because it did not perform as safely as an ordinary consumer would expect when it was used by Frank and Craig in the intended and reasonably foreseeable manner.

92. The risk of danger associated with designing and manufacturing the Subject

Steering System outweighed any real or perceived benefits from its design.

93.     At the time the Subject Steering System was designed and manufactured, alternative designs and methods of manufacturing existed that would have resulted in a safer and more useful component with little to no increase in cost to Dometic Marine.

94.     Dometic Marine knew or reasonably should have known that Frank and Craig would use the Subject Steering System without knowing of or inspecting for the Subject Steering Systems's defective condition.

95.     The Subject Steering System left Dometic Marine**'s** possession and control with the defects alleged in this Complaint, and the Subject Steering System remained in this defective and unreasonably dangerous condition until and throughout the incident giving rise to this lawsuit.

96.     At all times material hereto, the Subject Steering System remained substantially unchanged from its designed and manufactured condition.

97.     The Subject Steering System's defective condition directly and proximately acted as a cause of the death of Frank and a cause of the permanent injury and damage to Craig.

**WHEREFORE**, Plaintiffs, Noah Derylak for Frank Derylak and Craig Maxwell, demands judgment against Defendant, Dometic Marine, for the death of Frank and all injuries and damages Craig sustained due to the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, costs, and interest, and for any such further relief as the Court deems appropriate.

### COUNT IV—NEGLIGENCE
**(Against Dometic Marine)**

98.     Plaintiff re-alleges and incorporates Paragraphs 1 through 55 of this Complaint as if stated verbatim herein.

99.     Dometic Marine manufactured, assembled, distributed, supplied, and/or sold the Subject Steering System for use with the Subject Boat and for use with the other Control Components.

100.    Dometic Marine placed the Subject Steering System into the stream of commerce.

101.    Dometic Marine intended or reasonably foresaw that Frank and Craig would use the Subject Steering System with the Subject Boat.

102.    Frank and Craig used the Subject Steering System and the Subject Boat for their intended or foreseeable use.

103.    Dometic Marine owed the following duties to Frank and Craig:

a.  To manufacture, assemble, distribute, supply, and/or sell the Subject Steering System in a condition that was not defective or unreasonably dangerous to consumers and users;

b.  To provide adequate warnings and instructions with the Subject Steering System advising intermediaries, consumers and users about the proper use of the Subject Steering System, about the Subject Steering System's defective condition(s), and about how to avoid being injured by the Subject Steering System's defects; and

c.  To adequately test, inspect, and ensure the quality of the Subject Steering System before distributing and selling the Subject Steering System to consumers.

d.  To ensure that the foreseeable and intended use of the Subject Steering System with the Subject Boat was reasonably safe.

104.    Dometic Marine breached its duties by:

a.  Manufacturing, assembling, distributing, supplying, and/or selling the Subject Steering System in a defective and unreasonably dangerous condition;

b.  Failing to provide adequate warnings and instructions with the Subject Steering System advising consumers and users about the proper use of the Subject Steering System, about the Subject Steering System's defective condition(s), and about how to avoid being injured by the Subject Steering System's defects; and

c.  Failing to adequately test, inspect, and ensure the quality of the Subject Steering System before distributing and selling the Subject Steering System to White River Marine LLC for use in the Subject Boat.

d.  Failing to advise White River Marine that the Subject Steering System was

incompatible with the Subject Boat and could not be used safely with the Subject Boat and other Control Components.

105.     Dometic Marine knew or reasonably should have known that Frank and Craig would use the Subject Steering System without knowing of or inspecting for the defects alleged herein.

106.     Dometic Marine knew or reasonably should have known that Frank and Craig would suffer injury and damage due to the Subject Steering System's defective and unreasonably dangerous condition.

107.     At no time did Dometic Marine take action to remedy the Subject Steering System's defective and unreasonably dangerous condition or warn consumers about the Subject Steering System's defective and unreasonably dangerous condition, despite Dometic Marine's knowledge of these facts and ability to take action.

108.     Dometic Marine's breaches of the duties it owed to Frank and Craig were an actual and proximate caused the death of Frank and a cause of permanent injury and damage to Craig.

109.     As a direct and proximate result of Dometic Marine's negligence, Plaintiffs suffered death and  bodily injury including a permanent injury to the body as a whole, pain and suffering of both a physical and mental nature, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, activation of a latent condition and/or aggravation of a pre-existing condition, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and loss of ability to lead and enjoy a normal life.  The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

**WHEREFORE**, Plaintiff**,** Noah Derylak for Frank Derylak and Craig Maxwell, demands judgment against Defendant, Dometic Marine, for the death of Frank and all injuries and damages

Craig sustained due to the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT V – STRICT LIABILITY
### (Against T-H Marine)

110.    Plaintiff re-alleges and incorporates Paragraphs 1 through 55 of this Complaint as if restated verbatim herein.

111.    T-H Marine manufactured, assembled, distributed, supplied, and/or sold the Subject Jack Plate of the Subject Boat.

112.    T-H Marine placed the Subject Jack Plate into the stream of commerce to be supplied with the Subject Boat.

113.    T-H Marine intended for consumers like Frank and Craig to purchase and use the Subject Boat because it contained an Atlas Jack Plate system.

114.    Defendant T-H Marine knew this Subject Jack Plate would be used with the Subject Boat and intended to sell the Subject Jack Plate for use in this specific model boat.

115.    Frank and Craig used the Subject Jack Plate for its intended or foreseeable use.

116.    The Subject Jack Plate is defective in its design, manufacture, and warning.

117.    The Subject Jack Plate's defects, whether individually or in combination with all the Defendants products, rendered the Subject Steering System unreasonably dangerous beyond the contemplation and expectation of ordinary consumers.

118.    The Subject Jack Plate provided with the Subject Boat was defectively designed because it did not perform as safely as an ordinary consumer would expect when it was used by Frank and Craig in the intended and reasonably foreseeable manner.

119.    The risk of danger associated with designing and manufacturing the Subject Jack Plate outweighed any real or perceived benefits from its design.

120.    At the time the Subject Jack Plate was designed and manufactured, alternative designs and methods of manufacturing existed that would have resulted in a safer and more useful component with little to no increase in cost to T-H Marine.

121.    T-H Marine knew or reasonably should have known that Frank and Craig would use the Subject Jack Plate without knowing of or inspecting for the Subject Jack Plate's defective condition.

122.    The Subject Jack Plate left T-H Marine**'s** possession and control with the defects alleged in this Complaint, and the Subject Steering System remained in this defective and unreasonably dangerous condition until and throughout the incident giving rise to this lawsuit.

123.    At all times material hereto, the Subject Jack Plate remained substantially unchanged from its designed and manufactured condition.

124.    The Subject Jack Plate's defective condition directly and proximately acted as a cause of the death of Frank and a cause of the permanent injury and damage to Craig.

**WHEREFORE**, Plaintiffs, Noah Derylak for Frank Derylak and Craig Maxwell, demands judgment against Defendant, T-H Marine, for the death of Frank and all injuries and damages Craig sustained due to the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, costs, and interest, and for any such further relief as the Court deems appropriate.

### COUNT VI—NEGLIGENCE
**(Against Dometic Marine)**

125.    Plaintiff re-alleges and incorporates Paragraphs 1 through 55 of this Complaint as

if stated verbatim herein.

126.    T-H Marine manufactured, assembled, distributed, supplied, and/or sold the Subject Jack Plate for use with the Subject Boat.

127.    T-H Marine placed the Subject Jack Plate into the stream of commerce.

128.    T-H Marine intended or reasonably foresaw that Frank and Craig would use the Subject Jack Plate with the Subject Boat.

129.    Frank and Craig used the Subject Jack Plate and the Subject Boat for their intended or foreseeable use.

130.    T-H Marine owed the following duties to Frank and Craig:

a. To manufacture, assemble, distribute, supply, and/or sell the Subject Jack Plate in a condition that was not defective or unreasonably dangerous to consumers and users;

b. To provide adequate warnings and instructions with the Subject Jack Plate advising intermediaries, consumers and users about the proper use of the Subject Jack Plate, about the Subject Jack Plate's defective condition(s), and about how to avoid being injured by the Subject Jack Plate's defects; and

c. To adequately test, inspect, and ensure the quality of the Subject Jack Plate before distributing and selling the Subject Jack Plate to consumers.

d. To ensure that the foreseeable and intended use of the Subject Jack Plate with the Subject Boat was reasonably safe.

131.    T-H Marine breached its duties by:

a. Manufacturing, assembling, distributing, supplying, and/or selling the Subject Jack Plate in a defective and unreasonably dangerous condition;

b. Failing to provide adequate warnings and instructions with the Subject Steering System advising consumers and users about the proper use of the Subject Jack Plate, about the Subject Jack Plate's defective condition(s), and about how to avoid being injured by the Subject Jack Plate's defects; and

c. Failing to adequately test, inspect, and ensure the quality of the Subject Jack Plate before distributing and selling the Subject Jack Plate to White River

Marine LLC for use in the Subject Boat.

    d.    Failing to advise White River Marine that the Subject Jack Plate was incompatible with the Subject Boat and could not be used safely with the Subject Boat.

132.    T-H Marine knew or reasonably should have known that Frank and Craig would use the Subject Jack Plate without knowing of or inspecting for the defects alleged herein.

133.    T-H Marine knew or reasonably should have known that Frank and Craig would suffer injury and damage due to the Subject Jack Plate's defective and unreasonably dangerous condition.

134.    At no time did T-H Marine take action to remedy the Subject Jack Plate's defective and unreasonably dangerous condition or warn consumers about the Subject Jack Plate's defective and unreasonably dangerous condition, despite T-H Marine**'s** knowledge of these facts and ability to take action.

135.    T-H Marine**'s** breaches of the duties it owed to Frank and Craig an actual and proximate caused the death of Frank and a cause of permanent injury and damage to Craig.

136.    As a direct and proximate result of T-H Marine**'s** negligence, Plaintiffs suffered death and bodily injury including a permanent injury to the body as a whole, pain and suffering of both a physical and mental nature, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, activation of a latent condition and/or aggravation of a pre-existing condition, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and loss of ability to lead and enjoy a normal life. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

**WHEREFORE**, Plaintiff**,** Noah Derylak for Frank Derylak and Craig Maxwell, demands judgment against Defendant, T-H Marine, for the death of Frank and all injuries and damages Craig

sustained due to the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, costs, and interest, and for any such further relief as the Court deems appropriate

## COUNT VII – STRICT LIABILITY
### (Against White River Marine Group LLC)

137.    Plaintiff re-alleges and incorporates Paragraphs 1 through 55 of this Complaint as if restated verbatim herein.

138.    White River Marine Group LLC manufactured, assembled, distributed, supplied, and/or sold the Subject Boat with the Subject Jack Plate, the Subject Steering System and the Subject Outboard.

139.    White River Marine Group LLC placed the Subject Boat into the stream of commerce.

140.    White River Marine Group LLC intended for consumers like Frank and Craig to purchase and use the Subject Boat.

141.    Frank and Craig used the Subject Boat for its intended or foreseeable use.

142.    The Subject Boat is defective in its design, manufacture, and warning.

143.    The Subject Boat's defects, whether individually or in combination with the defects of the Control Components, rendered the Subject Boat unreasonably dangerous beyond the contemplation and expectation of ordinary consumers.

144.    The Subject Boat was defectively designed because it did not perform as safely as an ordinary consumer would expect when it was used by Frank and Craig in the intended and reasonably foreseeable manner.

145.    The risk of danger associated with designing and manufacturing the Subject Boat

as it was outweighed any real or perceived benefits.

146.    At the time the Subject Boat was designed and manufactured, alternative designs and methods of manufacturing existed that would have resulted in a safer and more useful Subject Boat with little to no increase in cost to White River Marine Group LLC.

147.    White River Marine Group LLC knew or reasonably should have known that Frank and Craig would use the Subject Boat without knowing of or inspecting for the Subject Boat's defective condition.

148.    The Subject Boat left White River Marine Group LLC's possession and control with the defects alleged in this Complaint, and the Subject Boat remained in this defective and unreasonably dangerous condition until and throughout the incident giving rise to this lawsuit.

149.    At all times material hereto, the Subject Boat remained substantially unchanged from its designed and manufactured condition.

150.    The Subject Boat's defective condition directly and proximately caused the death of Frank and permanent injury and damage to Craig.

**WHEREFORE**, Plaintiffs, Noah Derylak for Frank Derylak and Craig Maxwell, demands judgment against Defendant, White River Marine Group LLC, for the death of Frank and all injuries and damages Craig sustained due to the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT VIII—NEGLIGENCE
### (Against White River Marine)

151.    Plaintiff re-alleges and incorporates Paragraphs 1 through 55 of this Complaint as if stated verbatim herein.

152.    White River Marine Group LLC manufactured, assembled, distributed, supplied, and/or sold the Subject Boat with the Control Components.

153.    White River Marine Group LLC placed the Subject Boat into the stream of commerce.

154.    White River Marine Group LLC intended or reasonably foresaw that Frank and Craig would use the Subject Boat.

155.    Frank and Craig used the Subject Boat for its intended or foreseeable use.

156.    White River Marine Group LLC owed the following duties to Frank and Craig:

    a.  To manufacture, assemble, distribute, supply, and/or sell the Subject Boat in a condition that was not defective or unreasonably dangerous to consumers and users;

    b.  To provide adequate warnings and instructions with the Subject Boat advising consumers and users about the proper use of the Subject Boat, about the Subject Boat's defective condition(s), and about how to avoid being injured by the Subject Boat's defects; and

    c.  To adequately test, inspect, and ensure the quality of the Subject Boat before distributing and selling the Subject Boat to consumers.

157.    White River Marine Group LLC breached its duties by:

    a.  Manufacturing, assembling, distributing, supplying, and/or selling the Subject Boat in a defective and unreasonably dangerous condition;

    b.  Failing to provide adequate warnings and instructions with the Subject Boat advising consumers and users about the proper use of the Subject Boat, about the Subject Boat 's defective condition(s), and about how to avoid being injured by the Subject Boat's defects; and

    c.  Failing to adequately test, inspect, and ensure the quality of the Subject Boat before distributing and selling the Subject Boat to consumers.

158.    White River Marine Group LLC knew or reasonably should have known that Frank and Craig would use the Subject Boat without knowing of or inspecting for the defects alleged herein.

159.     White River Marine Group LLC knew or reasonably should have known that Frank and Craig would suffer injury and damage due to the Subject Boat's defective and unreasonably dangerous condition.

160.     At no time did White River Marine Group LLC take action to remedy the Subject Boat's defective and unreasonably dangerous condition or warn consumers about the Subject Boat's defective and unreasonably dangerous condition, despite White River Marine Group LLC's knowledge of these facts and ability to take action.

161.     White River Marine Group LLC's breaches of the duties it owed to Frank and Craig actually and proximately caused the death of Frank and permanent injury and damage to Craig.

162.     As a direct and proximate result of White River Marine Group LLC's negligence, Plaintiffs suffered death and  bodily injury including a permanent injury to the body as a whole, pain and suffering of both a physical and mental nature, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, activation of a latent condition and/or aggravation of a pre-existing condition, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and loss of ability to lead and enjoy a normal life.  The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

**WHEREFORE**, Plaintiffs**,** Noah Derylak for Frank Derylak and Craig Maxwell, demands judgment against Defendant, White River Marine Group LLC, for the death of Frank and all injuries and damages Craig sustained due to the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, costs, and interest, and for any such further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.


Dated: April 2, 2024.                    Respectfully Submitted,

                                              **MORGAN & MORGAN, P.A.**


                                              */s/ Christian Leger*
                                              **Christian M. Leger, Esq.**
                                              Florida Bar No.: 100562
                                              20 N. Orange Ave., Suite 1600
                                              Orlando, FL 32801
                                              Telephone: (689) 256–2102
                                              Email: cleger@forthepeople.com
                                              Secondary: mcampos@forthepeople.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 2nd day of April, 2024, a true and correct copy of the foregoing was filed with the Clerk of Court by using the Florida Court's e-Filing Portal, which will send an automatic copy to all counsel of record.


                                              */s/ Christian Leger*
                                              **Christian M. Leger, Esq.**